**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ROBERT A. AUSTIN and
RAAPOETRY LLC,

        Plaintiffs,           |     Case No. 1:21-CV-3826

        v.               |     Judge John Robert Blakey

COOK COUNTY and BRIAN CURRAN

        Defendants.

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Robert Austin (and his company RAAPoetry LLC) sue Cook County and Dr. Brian Curran related to Austin's 2018 and 2019 criminal prosecution in Illinois state court. Both Defendants move to dismiss all the claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [17]; [35]. For the reasons explained below, the Court grants both motions [17], [35].

## I.    Background

On July 19, 2021, Plaintiffs filed a *pro se* 33-page complaint against Cook County and Brian Curran for violations of their constitutional rights. [1]. The Complaint proves extremely difficult to follow. It seems that Plaintiffs' claims relate to the State of Illinois' 2018–2019 prosecution of Austin for alleged crimes relating to incidents stemming from Austin's interest in a WNBA player. *Id.* at 15. On December 18, 2019, the state court judge handling that case dismissed all charges against Austin with prejudice. *Id.* at 14.

1

Although the Complaint references Austin's arrest and vaguely alleges a wide-spread conspiracy involving state and private actors to arrest him for crimes he did not commit, this lawsuit does not appear to relate to Austin's arrest per se. In fact, Plaintiffs already sued the City of Chicago and various police officers in this district regarding Austin's arrest, *see Austin & RAAPoetry LLC v. City of Chicago et al.*, 18-CV-7268 (N.D. Ill. Oct. 31, 2018) (Durkin, J.). Some of Plaintiffs' claims in that case survived a motion to dismiss and proceeded to discovery, although on March 2, 2022, the court dismissed the case with prejudice based upon Austin's discovery tactics, which the court described as ranging "from frustrating to outright abusive." *Austin*, 2022 WL 614926, at *1 (N.D. Ill. Mar. 2, 2022).

Here, although the Complaint references this other lawsuit (as well as other grievances Austin has submitted to various federal and state agencies, including the U.S. Attorney's office, Illinois' ARDC and Judicial Inquiry Board, and the Illinois Department of Financial and Professional Regulation), [1] at 7–10, the Complaint focuses on Defendant Brian T. Curran, a psychologist with the Cook County Circuit Court's Forensic Services department. It alleges that Defendant Curran authored a report and falsely testified that Austin was unfit to stand trial. *Id*. at 13–14. Based upon Defendant Curran's testimony during a fitness hearing, the court remanded Austin to the Illinois Department of Human Services. *Id*. at 25. The Complaint describes Defendant Curran's opinion as "an unlawful, unethical, disrespectful, unfounded, unvalidated, egregious clinical opinion that Mr. Austin was unfit to stand trial" and that Defendant Curran only opined he was unfit as part of a "pre-trial

2

strategy to delay the production of discovery" to Austin and "was designed to cause extended detainment." *Id*. at 15. The Complaint further alleges that, had Defendants Curran and Cook County performed "Due Diligence/Verification" of information Austin provided in court on August 1, 2018, Defendant Curran would have known of Austin's fitness to stand trial as well as his innocence. *Id*. at 25. It alleges that Austin "was an innocent man being prosecuted for crimes that he did not commit" and that Defendant Curran's report and the prosecution, generally, joined a conspiracy by Defendants, the Chicago Police Department, and private parties, including executives of the entertainment company Roc Nation, to wrongfully prosecute him for his interest in a WNBA player. *Id*. at 15.

The Complaint brings all claims on behalf of Austin and a corporation, RAAPoetry, LLC, which Austin founded. Against both Defendants, the Complaint alleges 42 U.S.C. § 1983 claims for depriving Austin of the right to a fair trial (I), illegal detention (II), failure to intervene (III), and conspiracy (IV); as well as state law claims for malicious prosecution (VI), intentional infliction of emotional distress (Count VII), civil conspiracy (VIII); and tortious interference with business expectancy (XIII). Plaintiffs also bring a § 1983 *Monell* claim (V) against Defendant Cook County and seeks to hold it liable under theories of *respondeat superior* (IX), the Local Governmental and Governmental Employees Tort Immunity Act (X), and indemnification (XI). Against Defendant Curran, Plaintiffs also bring a medical malpractice claim (XII).

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raises a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2019). Importantly, it tests the sufficiency of the complaint, not the merits of the case. *See Givson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court must accept as true all well-pled factual allegations; it need not accept mere legal conclusions on conclusory assertions, however. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Further, a court should liberally construe pro se complaints, but pro se litigants must comply with the requirements of Rule 8(a) and all other rules of the court. *See Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("pro se litigants are not entitled to a general dispensation from the rules of procedure").

## III. Analysis

### A. Preliminary Matters

This Court must address some preliminary matters before turning to Plaintiff's claims. First, Plaintiffs insist that the Court should deem admitted all allegations and claims against Defendant Curran because Defendant Curran failed to timely respond to the Complaint. [23] at 7–9; [36] at 7–9. The Court granted Defendant Curran an extension to respond [31], however, and although Defendant Curran still filed his motion to dismiss a day late, [32], the Court granted him leave to file it [33]. Accordingly, the Court deems nothing admitted as to Defendant Curran.

Second, Plaintiffs have, since filing the Complaint, filed numerous exhibits [25], [27], [38] and an "INVESTIGATION Update" [39] in a seeming attempt to supplement the Complaint and further support their claims. By Minute Order, the Court already admonished Plaintiffs that, on a motion to dismiss, a court may not consider matters outside the Complaint. [40] (citing *Albany Bank & Tr. Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) ("documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss"); *Jackson v. Ill. Bell Tel. Co.*, No. 01 C 8001, 2002 WL 1466796, at *2 (N.D. Ill. July 8, 2002) ("The Federal Rules of Civil Procedure dictate that matters outside the pleadings cannot be considered when deciding a Rule 12(b)(6) motion to dismiss.")).

Plaintiffs filed a "POINT of order" [41] in response to the Court's order, insisting that the materials he filed remain relevant to his claims and prove his innocence and fitness. Relevant or not, the Court cannot consider evidence outside of a complaint in deciding a motion to dismiss. *See, e.g., Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint."). Plaintiffs may not amend the Complaint with additional facts offered through responsive pleadings. *See Agnew v. Nat'l Collegiate Athletics Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (holding that a complaint "may not be amended by briefs in opposition to a motion to dismiss."). Accordingly, the Court strikes [25], [27], [38] and [39] from the docket. Going forward, Plaintiffs shall not file evidence with the Court untethered to motions.

**B.**     **Plaintiff RAAPoetry's Claims**

Defendants move to dismiss all claims as to Plaintiff RAAPoetry, arguing that it lacks standing to bring them, [17] at 9; [35] at 4, and that "a corporation is not permitted to litigate in a federal court unless it is represented by a lawyer licensed to practice in that court," [17] at 9 (quoting *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008)).

The Court agrees that the Complaint alleges no conceivable basis for RAAPoetry to assert civil rights claims under § 1983 based on the arrest, prosecution, or pre-trial detention of Austin. In fact, the Complaint does not articulate any constitutional rights violations that RAAPoetry, itself, suffered. Rather, the Complaint only alleges violations to Austin's constitutional rights. *See White v. Ill. State Police*, 15 F.4th 801, 807 (7th Cir. 2021) (finding that an organization had not established "standing to sue on its own behalf because it does not allege an injury to itself").[1]

The Court also agrees that RAAPoetry cannot proceed with any of its claims *pro se*. *See Hagerman*, 545 F.3d at 581; *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985) ("[C]orporations must appear by counsel or not at all."). Plaintiffs insist [23] at 17 that RAAPoetry may proceed *pro se* in this case because Austin is RAAPoetry's sole member and the rule only applies when a corporation has multiple members. Not so. The rule exists because "the right to

---

[1] In limited circumstances, an association may sue on behalf of its members (known as "associational standing"). *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977). Nothing in the Complaint or Plaintiffs' responses to the motions to dismiss, however, suggest that RAAPoetry asserts standing to assert § 1983 claims on behalf of Austin.

conduct business in a form that confers privileges, such as the limited personal liability of the owners for tort or contract claims against the business, carries with it obligations one of which is to hire a lawyer if you want to sue or defend on behalf of the entity." *Hagerman*, 545 F.3d at 581–82. Pro se litigation is a "burden on the judiciary, and the burden is not to be borne when the litigant has chosen to do business in entity form. He must take the burdens with the benefits." *Id.* (internal citations omitted). Because RAAPoetry is not represented by a licensed attorney, the Court dismisses it from this case without prejudice.

This ruling should come as no surprise to Austin or RAAPoetry, since the same thing happened in Plaintiffs' other suit in this district in which RAAPoetry also attempted to proceed *pro se*. *See Austin & RAAPoetry LLC v. City of Chi., et al.*, 18-CV-7268, 2019 WL 4750279, at *4 (N.D. Ill. Sept. 30, 2019) ("Because RAAPoetry is not represented by a licensed attorney, it is dismissed from this case without prejudice"). Notably, that court subsequently struck references to RAAPoetry LLC in the amended complaint when RAAPoetry again attempted to proceed *pro se* notwithstanding the court's prior dismissal on that basis. *See Austin & RAAPoetry LLC v. City of Chi., et al.*, 18-CV-7268, 2021 WL 7904047, at *1 (N.D. Ill. Jan. 4, 2021) (reminding Austin of the prior dismissal of RAAPoetry and stating that, because "no attorney has filed an appears on behalf of RAAPOETRY LLC," "reference in the first amended complaint to RAAPOETRY LLC that names or describes the limited liability corporation as a plaintiff is therefore stricken."). Moving forward, RAAPoetry shall not attempt to bring claims in this case without a licensed attorney

representing it. Failure to follow this rule may subject Plaintiffs to sanctions under Rule 11 of the Federal Rules of Civil Procedure, including monetary sanctions and dismissal of a lawsuit.

### C.   § 1983 Claims Against Defendant Cook County

Defendant Cook County moves to dismiss Austin's § 1983 claims against it, arguing that Austin cannot hold Cook County vicariously liable for acts by its employees. It also moves to dismiss the *Monell* claim, arguing that the Complaint fails to allege facts to plausibly allege any express policy or *de facto* custom that caused Defendant Curran to allegedly violate Austin's constitutional rights. [17].

As Cook County correctly notes, a plaintiff may not sue a government entity under § 1983 for an injury inflicted solely by its employees or agents. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Accordingly, the Court dismisses the § 1983 claims (Counts I–IV) as to Defendant Cook County.

Turning to Austin's *Monell* claim, a government entity may face § 1983 liability if an express policy or unofficial but wide-spread and well-settled custom constitutes the "moving force" behind a constitutional violation by its employees or agents. *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Here, the Complaint alleges that Defendant Curran's false fitness opinion stems from official and *de facto* policies within Cook County to allow such conduct because Cook County: (1) has express policies that permit it; (2) does not promulgate proper or adequate "Rules, Regulations, Policies, and Procedures for the Clinical Opinions"; (3) fails to adequately train and supervise its employees; and (4) acts in concert with other co-

8

conspirators including the Cook County State's Attorney's Office to issue false clinical reports regarding fitness in order to deprive defendants of constitutional rights. [1] at 24.

First, to pursue a *Monell* express policy theory, a plaintiff must identify a policy and point to specific language in it that "explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Although Austin states that Defendant Curran violated his due process rights by way of a Cook County express policy, he does not identify any express policy. Thus, he has not stated a plausible *Monell* express policy claim.

Second, to pursue a *Monell* claim on a custom-and-practice theory, a plaintiff must establish a "widespread practice that permeates a crucial mass of the institutional body." *Rossi v. City of Chi.*, 790 F.3d 729, 737 (7th Cir. 2015). To bring a *Monell* claim for failure to enact rules, specifically, a plaintiff must also show that a municipality had "notice that its program will cause constitutional violations" where "notice" requires evidence of "a pattern of past similar violations" or "a risk so obvious that it compels municipal action." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020), *cert. denied sub nom. Polk Cnty., Wis. v. J.K. J.*, 141 S. Ct. 1125 (2021) (citing *Monell*, 436 U.S. at 690–91). Similarly, failure to train can only give rise to *Monell* liability where the failure reflects "a high degree of culpability on the part of the policymaker." *Cornfield by Lewis v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1327 (7th Cir. 1993). To avoid using a failure to train theory to create vicarious municipal liability, a plaintiff typically must show "a pattern of similar

constitutional violations by untrained employees...to demonstrate deliberate indifference" by policymakers who "knew or should have known the training was inadequate and nevertheless disregarded the consequences." *Sanchez v. Garcia*, No. 12 C 6347, 2015 WL 2097606, at *5 (N.D. Ill. May 4, 2015) (quoting and citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Here, besides conclusory assertions, the Complaint only points to Defendant Curran's fitness opinion about Austin. [1] at 23–24. He also argues in his response to Cook County's motion that there must be a widespread practice because "How else could the Defendant Brian T. Curran feel so Empowered to Commit these Egregious Actions against the Plaintiff?" [23] at 15. Although, theoretically, a plaintiff may establish a *de facto* policy based on his own experiences, it is "necessarily more difficult" because "what is needed is evidence that there is a true municipal policy at issue, not a random event." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (quoting *Calhoun*, 408 F.3d at 380). Here, however, the Complaint fails to offer any evidence to suggest a true municipal de facto policy. Further, Austin's conjecture that a widespread practice must exist does not satisfy Rule 8(a) pleading requirements. Accordingly, the Court dismisses the *Monell* claim (Count V).

### D.    Section § 1983 Claims Against Defendant Curran

The Complaint alleges multiple § 1983 claims against Defendant Curran— violation of Austin's right to a fair trial, illegal detention, failure to intervene, and conspiracy. [1] at 13–16. In moving to dismiss these claims, Defendant Curran

argues that the Complaint fails to set out any facts or explain how he violated Austin's constitutional rights. [35].

The Court agrees. The only discernable factual allegations in the Complaint relate to Defendant Curran's opinion that Austin was unfit to stand trial. The Complaint alleges that, because of Defendant Curran's allegedly false or unfounded testimony before a state court judge that Austin was unfit to stand trial, the court found Austin unfit and remanded him to the Illinois Department of Human Services in violation of his constitutional rights. Even if Defendant Curran did not testify truthfully or honestly, however, there exists an insurmountable obstacle to § 1983 claims based on this theory: the Supreme Court has held that witnesses, whether private or acting on behalf of the government, enjoy absolute immunity from suit under § 1983 for their testimony. *Briscoe v. LaHue*, 460 U.S. 325, (1983). Although *Briscoe* considered whether police officers, specifically, enjoy absolute immunity from § 1983 actions based on their testimony, the Court's holding makes clear that this absolute immunity extends to any witness, whether testifying in a private or official capacity:

> [T]he common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process. It is equally clear that § 1983 does not authorize a damages claim against private witnesses on the one hand, or against judges or prosecutors in the performance of their respective duties on the other. When a police officer appears as a witness, he may reasonably be viewed as acting like any other witness sworn to tell the truth—in which event he can make a strong claim to witness immunity; alternatively, he may be regarded as an official performing a critical role in the judicial process, in which event he may seek the benefit afforded to other governmental participants in the same proceeding. Nothing in the language of the statute suggests that such a

11

> witness belongs in a narrow, special category lacking protection against
> damages suits.

*Id.* at 335–36. Further, while *Briscoe* related to trial testimony, the Seventh Circuit
in *Curtis v. Bembenek* held that *Briscoe*'s rule also applies to any adversarial pretrial
settings. 48 F.3d 281, 285 (7th Cir. 1995) ("the policy considerations for granting
absolute immunity to witnesses testifying at trial apply with equal force to witness
testimony in adversarial pretrial settings.").

Here, as alleged, Austin's § 1983 claims rise and fall on Defendant Curran's
testimony at a fitness hearing before the state court in which Austin participated.
*Briscoe* and *Curtis* instruct that Defendant Curran enjoys absolute immunity from
§ 1983 claims based upon that testimony. Accordingly, the Court dismisses the
§ 1983 claims against Defendant Curran with prejudice.

### E.    Plaintiffs' State Law Claims

Finally, the Complaint also alleges various state law claims against both
Defendants. The Court has dismissed the federal claims, however, and diversity
jurisdiction does not exist; thus, supplemental jurisdiction remains the only basis for
the Court's jurisdiction over the state law claims. When "all federal claims have been
dismissed prior to trial, the principle of comity encourages federal courts to relinquish
supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trustees of
Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). This remains true even
when a Court resolves federal claims on a Rule 12(b)(6) motion. *See, e.g., Dronby v.
JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 850–51 (N.D. Ill. 2013) (dismissing
state law claims after dismissing federal claims without prejudice pursuant to Rule

12(b)(6)); *Kwan Bom Cho v. GCR Corp.*, No. 12 C 4562, 2013 WL 675066 at \*2–3 (N.D. Ill. Feb. 22, 2013) (same).

The Seventh Circuit in *Wright v. Associated Insurance Companies, Inc.* noted that, in unusual cases a federal court may have good reason to retain supplemental jurisdiction on pendent claims, including if "the statute of limitations has run on the pendent claims, precluding a filing of a separate suit in state court"; or if the federal court and parties have already expended substantial resources on the case. 29 F.3d 1244, 1251–53 (7th Cir. 1994). This is not such a case, particularly since Illinois gives plaintiffs one year to re-file state claims that a federal court dismissed on jurisdictional grounds. 735 ILCS 5/13-217. Further, comity strongly suggests that an Illinois state court, not a federal court, should resolve this lawsuit's purely state law claims brought by Illinois citizens alleging misconduct by state actors related to a state criminal proceeding. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice and without discussing the merits. The Court has dismissed some of the federal claims without prejudice, however; thus, if Plaintiffs amend, they may replead their state law claims.

## IV. Conclusion

For the reasons discussed above, the Court grants Defendants' motions [17], [35]; dismisses Counts I–IV against both Defendants; dismisses the *Monell* claim (Count V) against Defendant Cook County; and dismisses the state law claims against both Defendants (Counts VI–XIII) without prejudice for lack of jurisdiction.

The Court also dismisses RAAPoetry, LLC from the case because it may not proceed *pro se*. The Court also strikes [25], [27], [38] and [39] from the docket. If Plaintiff believes, in keeping with his Rule 11 obligations, that he can amend the Complaint to plead viable federal claims against either Defendant, then he may file an amended complaint on or before 10/6/2022 and, in it, may replead viable state law claims. RAAPoetry may not assert claims going forward, however, unless it obtains a licensed attorney to represent it. Further, regardless of whether Plaintiff Austin continues to proceed *pro se*, he must comply with all court orders and the rules of procedure.

Dated: September 22, 2022          Entered:

John Robert Blakey
United States District Judge

14